**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amy B Lewis, | No. CV-21-01746-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Marriott International Incorporated, et al., | |
| Defendants. | |

Pending before the Court are Defendants Maritz and Merz's (collectively, "Maritz/Merz") Motion for Reconsideration (Doc. 216), and Plaintiff Amy B. Lewis's Motion for Reconsideration (Doc. 223). Both Motions petition this Court to reconsider parts of its prior Order granting Maritz/Merz's Motion for Summary Judgment (Doc. 170) in part, and Defendant AV Masters' ("AVM") Motion for Summary Judgment (Doc. 178) in full. The Court has considered the briefing and relevant case law and will grant Maritz/Merz Motion to the extent that it asks this Court to analyze additional requirements under *Dabush v. Seacret Direct LLC*, 478 P.3d 695 (Ariz. 2021). The Motion is denied in all other respects and the Court maintains that summary judgment was not appropriate. Plaintiff's Motion for reconsideration is denied, as it merely repackages arguments made in her opposition to AVM's Motion for Summary Judgment.

**I.     BACKGROUND**

The Court set forth the factual background of this case in its previous Order on Defendants Maritz and Merz's as well as Defendant AV Masters' Motions for Summary

Judgment (Doc. 211). That background is repeated here for ease of reference.

This is a personal injury action arising from Lewis falling from an event stage at Scottsdale Marriott at McDowell Mountains, which is owned and operated by Marriott Hotel Services, Inc. (collectively, the "Hotel"). (Doc. 1 at 1, 4.) From January 11 to 13, 2019, Merz, a pharmaceutical company, hosted a conference at the Hotel. (Doc. 171 at 2 ¶ 1.) Merz engaged Maritz, an event planning firm, to organize the conference on its behalf. (*Id.* ¶ 2.) Merz, through Maritz, executed a Letter of Agreement with the Hotel, which stated, in relevant part:

> § 3.4 – USE OF FUNCTION SPACE
> To protect the safety and security of all Hotel guests and property, [Merz] agrees that it will not use any items in the Function space that create any amplified noise, smell, or visual effect (other than decorations) without advance notification and written approval by Hotel.
>
>     . . . .
>
> § 12.9 – AGENCY
> [The] Hotel is not an agent of Maritz nor of [Merz] and is therefore not authorized by Maritz or [Merz] to act as their respective agent. . . .

(*Id.*) Merz and the Hotel subsequently executed a contract addendum that stated:

> 9. Function Space
> [The Hotel] will not change any function space (general session, breakout rooms, meals, receptions, etc.) under any circumstances as outlined in the Agreement without [Merz's] prior written approval.

(*Id.* ¶ 4 (second alteration in original).)

Attendees of the conference were required to agree to a "clickwrap" responsibility statement on Maritz's website. (Doc. 171-1 at 72; Doc 190 at 10 ¶ 13; 189-2 at 182.) The responsibility statement stated:

> The undersigned acknowledge[s] that [Maritz] and the event sponsor [Merz] maintain no control over the independent suppliers that will be providing accommodations and services as a part of the travel program. Accordingly, the undersigned agree[s] not to hold [Maritz] or [Merz] responsible for any loss or injury which may be caused or contributed to by such suppliers or by any other cause, condition or event whatsoever beyond the direct control of [Maritz] or [Merz]. The undersigned hereby release[s] [Maritz] and [Merz] .

> . . from any and all liability for claims resulting from any acts or omissions of the independent travel suppliers providing accommodations and services in connection with the travel program, or from any other cause, condition or event beyond the direct control of [Maritz] and/or [Merz]. . . .

(Doc. 171 at 4 ¶ 14.) The parties dispute, however, whether Lewis agreed to the responsibility statement prior to her attendance. (*Id.*; Doc. 190 at 6 ¶ 14.)

Maritz/Merz hired AVM to provide audio-visual equipment and support for the event. (Doc. 179 at 2 ¶ 2.) AVM's audio-visual setup was subject to Maritz, Merz, and the Hotel's approval. (*Id.* ¶ 3.) After AVM completed its setup, the Hotel constructed a stage subject to Maritz/Merz's review and approval. (Doc. 171 at 3 ¶ 6; Doc. 179 at 2 ¶ 4.) Although Lewis disputes who had the final say over the design and placement of the stage. (Doc. 190 at 4–5 ¶¶ 6–10; Doc. 194 at 3–4 ¶ 5.) Karen Goldstein, the Director of Events at the Hotel, testified at her deposition that the Hotel maintained final say over the position of the stage according to the Hotel's procedures. (Doc. 171-1 at 58–59.) The parties also dispute whether Maritz/Merz reviewed the Hotel's design for the stage. (*See* Doc. 171 at 3 ¶ 7; Doc. 190 at 4 ¶ 7.) Deposition testimony by Hotel employee Israel Pena-Acosta maintains Maritz/Merz reviewed and denied at least one version of the Hotel's proposed stage design. (Doc. 171-1 at 66–67.)

After Marriott constructed the stage, there was a gap between the back end of the stage and the back wall of the room. (Doc. 171 at 3 ¶ 11.) Maritz/Merz state that this gap is "customary and part of [the Hotel's] standard operating procedures." (*Id.* ¶ 12.) Lewis, through an expert, denies that such a gap is custom and that the stage, screen, and lighting setup deviated from industry norms. (Doc. 189-2 at 51–52.) On January 12, 2019, Lewis gave a presentation at the Hotel on the stage. (Doc. 171 at 4 ¶ 15.) While moving around the stage, Lewis's right foot stepped into the gap between the stage and the screen. (*Id.* ¶ 16.) Lewis allegedly sustained injuries form the fall. (*Id.* ¶ 17.)

Lewis filed suit in the United States District Court for the Southern District of New York (Doc. 1) before it was transferred to this Court (Doc. 74). Maritz/Merz and AVM now move for summary judgment on all claims. (Doc. 170; Doc. 178.)

- 3 -

## II. LEGAL STANDARD

"Motions to reconsider are appropriate only in rare circumstances." *333 W. Thomas Med. Bldg. Enters. v. Soetantyo*, 976 F. Supp. 1298, 1302 (D. Ariz. 1995). These circumstances include when the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "A motion for reconsideration should not be used to ask a court to rethink what the court had already thought through—rightly or wrongly." *United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998) (cleaned up). Lastly, courts should deny motions for reconsideration if they only reiterate previous arguments. *See Maraziti v. Thorpe*, 52 F.3d 252, 255 (9th Cir. 1995); *see also Ogden v. CDI Corp.*, No. CV 20-01490-PHX-CDB, 2021 WL 2634503, at *3 (D. Ariz. Jan. 6, 2021) (denying a motion for reconsideration when plaintiff did "nothing more than disagree with this Court as to the relevant law").

## III. DISCUSSION

### A. Maritz/Merz's Motion for Reconsideration

Previously, the Court found Maritz/Merz possessed the ability to exclude Marriott employees from the premises, and that Maritz/Merz directed the use of the stage at the time of the incident. (Doc. 211 at 8–9.) Maritz/Merz challenge this finding, asserting that *Dabush* requires the tenant to possess plenary authority to direct repair and maintenance in addition to use to establish a duty of care. (Doc. 216 at 3.) Defendants further contend that the record does not establish that Maritz/Merz possessed the requisite authority to repair or maintain the stage, and therefore no duty of care exists. (*Id.* at 8.)

In response, Plaintiff contends that Maritz/Merz had direct control over the stage and AVM, and that such control could have repaired the gap between the stage and the audio-visual equipment. (Doc. 222 at 4.) Specifically, Maritz/Merz could instruct AVM to either install railing to prevent persons from falling into the gap or set up the drapes and backdrop such that no gap existed in the first place. (*Id.*)

Upon reviewing *Dabush*, the Court agrees with Maritz/Merz that the elements to establish a duty of care under a premises liability theory were stated conjunctively—that is, a plaintiff must evince that a possessor had the authority to exclude others from the property and the authority to direct the repair, maintenance, *and* use. *Dabush*, 478 P.3d at 700. However, the Court finds that the record establishes that Maritz/Merz had the ability to direct how the stage was repaired, maintained, and used. *See id.*

The Court notes that this Order is directed at the previously unanalyzed sub-elements—actual authority over (1) maintenance and (2) repair. The Court will not entertain reiterated arguments already decided in its Order on the Motions for Summary Judgment, *see Maraziti*, 52 F.3d at 255, unless the movant shows reconsideration of such arguments are warranted under Local Rule 7.2(g). To start, the Court briefly recounts the facts and analysis in *Dabush*. There, Dabush fell through the skylight of a building owned by a landlord, leased to a lessee, and subleased to the three sublessee defendants. *Dabush*, 478 P.3d at 697. Dabush settled with the landlord and lessee. *Id.* n.1. And after the Arizona Court of Appeals weighed in, the Arizona Supreme Court directed its analysis at two sublessees—Direct and Prizma. *See id.* When the court discussed actual control, it found neither defendant had the authority to exclude others from the roof. *Id.* at 701. The court also noted several reasons that neither Direct nor Prizma had the authority to repair and maintain the roof. First, the lessee, not the defendants, discovered the leaks and hired and paid Prizma to fix them. *Id.* Second, even though Direct assisted in the repair and attempted to give orders to Prizma's workers, it lacked control because it did not pay for the repairs. *Id.*

While the facts of *Dabush* are distinguishable to the case at hand, the legal principles still show the existence of a duty of care. *See Gipson v. Kasey*, 150 P.3d 228, 232 (Ariz. 2007) (holding that duty is a legal matter to be determined before the case-specific facts are considered). Here, Maritz/Merz did not attempt to maintain or repair the stage in any form. However, testimony from AVM employee Grant Stuppel tends to show Maritz/Merz could direct AVM to set the screen to abut the stage or make other design related choices

that would have ostensibly prevented the gap at the back of the stage. (Doc. 179-2 at 20.) Marriott employees Israel Acosta and Karen Goldstein's depositions reflects similar conclusions. (Doc. 191-1 at 2, 5, 9–10; Doc. 191-2 at 4.) In other words, Maritz/Merz, under these circumstances, had the authority to take actions akin to maintenance and repair to either have prevented or fixed the gap on the stage. *See Dabush*, 478 P.3d at 700–01; *Timmons v. Ross Dress for Less, Inc.*, 324 P.3d 855, 856–58 (Ariz. Ct. App. 2014) (finding actual control existed over a curb serving as the point of ingress and egress for a storeowner who was the sole inhabitant of a shopping center).

As noted, this Court previously found that Maritz/Merz was directly involved in the stage's design process, excluded Hotel employees from the conference hall, and had Maritz/Merz plenary authority to direct the use of the stage during the conference, including when Lewis fell. (Doc. 211 at 8.) After reviewing the case law and the record, the Court finds that Maritz/Merz also had the authority to direct the maintenance and repair the stage.[1]

### B. Plaintiff's Motion for Reconsideration

Previously, this Court dismissed AVM as Defendant after finding no genuine dispute of material facts existed between Plaintiff and AVM. (Doc. 211.) Now, Plaintiff seemingly asserts that the Court committed "manifest error" by misapplying *Dabush* and failing to give greater weight to Grant Stuppel's testimony. (Doc. 223 at 3.) In response, AVM contends that Plaintiff is merely rehashing the arguments she made in her opposition to the Motion for Summary Judgment (Doc. 193), and therefore the instant Motion must fail. (Doc. 227 at 4.)

The Court agrees with AVM. Motions for reconsideration are generally reserved

---

[1] Maritz/Merz also contend that the Court's finding that Marriott retained the ability to refuse to act by reserving final say over the design and construction of the stage prevents a duty from manifesting. (Doc. 216 at 9.) While another actor may reserve final say over the keeping of a premises, the Court does not agree that precludes a duty of care from materializing on a party who otherwise possesses actual control. Indeed, *Dabush* did not foreclose the possibility of multiple persons exercising actual control, although the court did not reach that question. *See* 478 P.3d at 701 n.3.

for instances in which a court has committed a grave error, or new legal or factual authority is brought to light. LRCiv 7.2(g). Plaintiff's Motion merely recites excerpts of the law and Stuppel's deposition testimony it believes to have been strong enough to ward off summary judgment in favor of AVM. (*See* Doc. 223 at 3–5.) Plaintiff also reasserts her arguments that AVM's participation in the room setup and the subsequent event shows that AVM owed a duty of care to her. (*Id.*) At bottom, Plaintiff simply disagrees with this Court's application of the relevant law to the facts of this case. While such disagreement may warrant an appeal, it certainly is not grounds for reconsideration under this District's local rules. *See Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988) (denying a motion for reconsideration where plaintiff "merely articulates disagreement with this court's analysis in its prior order"); *World Mkt. Ctr. Venture, LLC v. Ritz*, 2009 WL 10693919, at *1 (D. Nev. Mar. 25, 2009) ("Motions for reconsideration are not the proper vehicles for rehashing old arguments and are not intended to give an unhappy litigant one additional chance to sway the judge." (cleaned up)).

Therefore, Plaintiff's Motion for Reconsideration (Doc. 223) is denied.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** granting in part Maritz/Merz Motion for Reconsideration (Doc. 216). The Motion is denied with respect to Maritz/Merz's request that summary judgment be entered in their favor.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Reconsideration (Doc. 223).

Dated this 12th day of November, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge